IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ROBERT G. B.,

                    Plaintiff,

         v.                                    Civil Action No.
                                               5:21-CV-0291 (DEP)


COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

<u>APPEARANCES</u>:                    <u>OF COUNSEL</u>:

<u>FOR PLAINTIFF</u>

MEGGESTO, CROSSETT              KIMBERLY A. SLIMBAUGH, ESQ.
& VALERINO, LLP
511 East Fayette Street
Syracuse, NY 13202

<u>FOR DEFENDANT</u>

SOCIAL SECURITY ADMIN.          RONALD W. MAKAWA, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER[1]

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that he was not disabled at the relevant times and, accordingly, is ineligible for the disability insurance ("DIB") and supplemental security income ("SSI") benefits for which he has applied.  For the reasons set forth below, I conclude that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in November of 1973, and is currently forty-eight years of age.  He was forty-two years old on February 3, 2016, the date on which he filed his applications, and forty-one years old on April 1, 2015, the date on which he claims he became disabled.  Plaintiff stands six feet in height, and weighed approximately two hundred and twenty pounds during the relevant time period.  Plaintiff resided for a time with his ex-wife, but most recently lived by himself in a mobile home in Canastota, New York.

In terms of education, plaintiff reports that he graduated from high

---

[1]    This matter is before me based upon consent of the parties, pursuant to 28 U.S.C. § 636(c).

school and undertook a few years of college courses, although there is no indication that he received a college degree.  He has worked in the past primarily as truck driver, in which capacity he worked for nearly twenty years.  He also worked for a period of time as a dump truck driver for a cement company.  Plaintiff reports that he stopped working because his psoriasis and psoriatic arthritis caused too much pain and loss of mobility, particularly in his right hand, such that he became unable to drive a truck.

Physically, plaintiff alleges that he suffers from pain most prominently on his right side, but occurring all over his body, due to psoriasis and psoriatic arthritis, which also causes stiffness of his joints.  He has received treatment for these impairments from sources at Oneida Orthopedics, Dermatology Associates of Central New York, Chittenango Medical and Wellness Associates, neurologist Dr. Islam Hassan, physician's assistant ("PA") Trent Ross and PA Kristin Suchowiecki with Canastota Lenox Health Center, Arthritis Health Associates, and Associated Gastroenterologists of Central New York.  Plaintiff additionally alleges that he suffers from depression and anxiety, causing him to be irritable and angry, and for which he has received treatment in the form of medication throughout the relevant period from his primary care provider.

Plaintiff alleged at the initial administrative hearing related to his

applications for benefits that he is unable to work due primarily to the pain and stiffness caused by his psoriasis and psoriatic arthritis.  He claims to experience pain throughout his body, as well as weakness in his right hand and difficulty turning his neck to the right or looking up.  Plaintiff reports that he has difficulty sitting, standing, or walking for long periods of time because it makes his body feel stiff.  He is on multiple medications, and generally does well with Remicade infusions, but experiences flares of severe symptoms if he cannot get his injections due to infections or surgical procedures, which has happened on a few occasions.  Plaintiff also reports symptoms of depression, for which he is taking medication, which helps, but has not seen a mental health specialist. Plaintiff reports he can do laundry and light cleaning and cooking, but he requires assistance to open containers and perform housework and yard maintenance, and experiences some difficulty moving around.  He testified that he often stays home, both because of his limited finances and because it is uncomfortable to be out if he experiences a psoriasis flare.

At the most recent administrative hearing, plaintiff testified that his issues have worsened somewhat, as he has more difficulty sitting and standing, and symptoms are occurring in his left hand now in addition to his right.  He had begun receiving a different injectable medication for his

psoriasis that helps alleviate his stiffness and difficulty moving.  He reports that he has difficulty using buttons or holding silverware, has decreased range of motion in his shoulder and neck, and can drive other than to the extent he is limited in his ability to sit for long periods of time.  Plaintiff also testified that the medication he takes for depression, anxiety, and anger issues makes his symptoms tolerable and manageable.  He reports that he is able to care for himself and perform basic household tasks, but that it takes him longer to complete those chores.

II.   PROCEDURAL HISTORY

    A.   Proceedings Before the Agency

Plaintiff applied for DIB and SSI payments under Titles II and XVI of the Social Security Act, respectively, on February 3, 2016.  In support of his application, he claimed to be disabled due to symptoms in his right hand including pain and loss of strength and grip, pain in his right hip, a bulging disc in his neck, and psoriasis.

A hearing was conducted on May 22, 2018, by ALJ Ramon Suris-Fernandez to address plaintiff's applications for benefits.  ALJ Suris-Fernandez issued an unfavorable decision on June 19, 2018.  On October 25, 2019, the Social Security Appeals Council ("Appeals Council") vacated that decision and remanded the matter for further consideration, particularly

of plaintiff's mental impairment.  On July 14, 2020, ALJ John P. Ramos

conducted a second administrative hearing to obtain updated information

regarding plaintiff's claim.  ALJ Ramos subsequently issued an unfavorable

decision on August 4, 2020.  That opinion became a final determination of

the agency on February 8, 2021, when the Appeals Council denied

plaintiff's request for review of the ALJ's decision.

B.    The ALJ's Decision

In his decision, ALJ Ramos applied the familiar, five-step sequential

test for determining disability.  At step one, he found that plaintiff has not

engaged in substantial gainful activity during the relevant period.

Proceeding to step two, ALJ Ramos found that plaintiff suffers from severe

impairments that impose more than minimal limitations on his ability to

perform basic work functions, including a right rotator cuff tear status post

surgery, psoriasis, psoriatic arthritis, cervical degenerative disc disease,

and obesity.  The ALJ further found that plaintiff's impairments of carpal

tunnel syndrome and depression are not severe.

At step three, ALJ Ramos examined the governing regulations of the

Commissioner setting forth presumptively disabling conditions (the

"Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that

plaintiff's conditions do not meet or medically equal any of those listed

6

conditions, specifically considering Listings 1.02, 1.04, 8.05, and 14.09.  He

also considered Social Security Ruling ("SSR") 02-01p related to obesity,

which is not covered by any specific listing.

ALJ Ramos next surveyed the available record evidence and

concluded that, during the relevant time period, plaintiff retained the

residual functional capacity ("RFC") to perform a range of sedentary work

with the following restrictions:

> he cannot climb ladders, ropes or scaffolds. The
> claimant can occasionally climb ramps and stairs,
> kneel, crouch and crawl. The claimant's ability to
> balance is unlimited. He can perform no bilateral
> overhead reaching. The claimant can occasionally
> push/pull with bilateral arms. He can no more than
> frequently turn his head from side to side. The
> claimant can no more than frequently finger, feel, and
> handle with his right upper extremity.

ALJ Ramos found at step four that, with the above RFC, plaintiff is

unable to perform his past relevant work as a long-haul driver.  Proceeding

to step five, the ALJ elicited the testimony of a vocational expert ("VE")

regarding how plaintiff's limitations would impact his ability to perform other

available work in the national economy and concluded, in light of the VE's

testimony, that plaintiff remains able to perform representative positions

such as document preparer and addresser.  Based upon these findings,

ALJ Ramos concluded that plaintiff was not disabled during the relevant

period.

C.   This Action

Plaintiff commenced this action on March 15, 2021.[2]  In support of his challenge to the ALJ's determination, plaintiff argues that (1) the ALJ failed to properly assess the opinion from consultative examiner Dr. Elke Lorensen; (2) the finding at step five is not supported by substantial evidence because it was based on an incomplete hypothetical question that did not encompass all of plaintiff's documented limitations; and (3) the ALJ failed to consider the effects of his depression on his work-related functioning and specifically failed to include a limitation on his ability to interact with others based on his reports of anger and irritability.  Dkt. No. 13.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and

_____

[2]      This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the

9

administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation

marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal

whether an ALJ's findings are supported by substantial evidence, a

reviewing court considers the whole record, examining evidence from both

sides, because an analysis on the substantiality of the evidence must also

include that which detracts from its weight."  *Williams*, 859 F.2d at 258

(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951);

*Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

     B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).

If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.   Analysis

1.   The ALJ's Assessment of the Relevant Opinion Evidence

Plaintiff first argues that the ALJ erred when affording partial weight to the opinion of consultative examiner Dr. Elke Lorensen, arguing that (1) the terms in which that opinion was expressed, such as "mild" and "moderate," are too vague to indicate whether plaintiff can perform certain relevant actions on a frequent basis, (2) the ALJ's reliance on his reported ability to do some chores and drive himself to appointments is neither inconsistent with the evidence nor incompatible with a claim for disability,

12

and (3) the ALJ ignored evidence supporting greater limitations in his right hand than the ALJ accounted for in his RFC finding.  Dkt. No. 13, at 15-16.

Because plaintiff's applications were filed prior to March 17, 2017, the former, unamended regulations regarding the evaluation of medical opinion evidence apply to this case.  Under those regulations, an ALJ is required to first consider whether the treating physician's opinion is entitled to controlling weight by assessing whether the treating source's medical opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  If the treating physician's opinion is not entitled to controlling weight, or if the opinion being assessed is from a source other than a treating physician, the ALJ is required to consider what degree of weight, if any, to which an acceptable medical source's opinion is entitled by considering factors such as (1) the frequency, length, nature, and extent of treatment, (2) the amount of medical evidence supporting the opinion, (3) the consistency of the opinion with the remaining medical evidence, and (4) whether the physician is a specialist.  *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019); *see also Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008).  The ALJ must "always give good reasons" for the weight afforded to a

treating source.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The former

regulations specifically provided that the ALJ must evaluate every medical

opinion and must explicitly consider all of these factors when deciding what

weight to give to any medical opinion.  20 C.F.R. §§ 404.1527(c),

416.927(c).  However, although the ALJ is required to explicitly consider all

of these factors, the failure to do so will be deemed harmless if a

"searching review of the record assures [the court] that the substance of

the treating physician rule was not traversed."  *Estrella*, 925 F.3d at 95-96.

On April 11, 2016, consultative examiner Dr. Elke Lorensen

conducted an examination of plaintiff in connection with his disability

applications.  Administrative Transcript ("AT") at 772.[3]  During the

examination, plaintiff reported that his activities of daily living consist of

cooking twice per week, cleaning dishes once per day, doing laundry once

per day, showering two or three times per week, dressing daily, listening to

the radio, watching television, reading, and shopping, although he has

some difficulty walking.  AT 773.  Dr. Lorensen observed that plaintiff was

in no acute distress, but had an abnormal gait that mildly favored the left

lower extremity, he was unable to walk on his heels and toes without

---

[3]     The administrative transcript is found at Dkt. No. 12, and will be referred to herein
as "AT __."

difficulty, and his squat was only forty percent of normal.  *Id.*  He had

extensive psoriasis on his right upper extremity and mild on his lower

extremities.  *Id.*  The range of motion in plaintiff's cervical spine, lumbar

spine, right shoulder, elbow, and wrist, and right ankle were all observed to

be limited.  AT 774.   Dr. Lorensen also noted that plaintiff had decreased

sensation to light touch in his right arm and right leg with 4/5 strength in

both of those extremities and 3/5 right grip strength; he was also found to

have mild difficulty zipping and unzipping with the right hand, but with intact

functioning with the left hand.  AT 774-75.  Based on this examination, Dr.

Lorensen opined that plaintiff has no limitations in his abilities to sit and

handle small objects with his left hand, mild limitations in standing,

ambulating, and handling small objects with the right hand, and moderate

limitations in bending, reaching, lifting, pushing and pulling with his right

upper extremity and turning his head.  AT 775.

   The ALJ afforded partial weight to Dr. Lorensen's opinion, noting that

he credited it "to the extent that her findings are supported by the totality of

the evidence."  AT 27.  The ALJ indicated that the opinion is based on a

one-time examination, and that the opined restriction in turning plaintiff's

head is unsupported by the fact that he is able to drive and perform

activities of daily living, both of which suggest he has the ability to

frequently turn his head.  *Id.*  The ALJ further found that the portion of Dr. Lorensen's opinion that plaintiff is capable of at least sedentary work with some postural, reaching and manipulative limitations is supported, but noted that plaintiff should also have additional limitations on pushing and pulling with his left arm rather than solely with his right arm.  *Id.*

I note that the only respect in which Dr. Lorensen's opinion appears to be arguably more limiting that the ALJ's RFC finding relates to plaintiff's ability to turn his head.  AT 21-22, 775.  The limitation to sedentary work more than accounts for the mild limitation in standing and walking and moderate limitation in lifting.  *Id.*  The limitation for no overhead reaching and occasional pushing and pulling with the bilateral arms accounts for the moderate limitations in reaching, pushing and pulling.  *Id.*  And, the limitation to frequently handling, fingering and feeling with the right hand is generally consistent with Dr. Lorensen's finding that plaintiff is only mildly limited in using small objects with his right hand.  *Id.*  Notably, the only aspects of the ALJ's assessment of Dr. Lorensen's report that plaintiff appears to challenge are the opined limitations relating to turning his head and using his right hand.

As to both of these limitations, plaintiff argues that use of the terms "mild" and "moderate" are too vague to allow the ALJ to determine that the

relevant activities should be limited to frequent, as opposed to occasional or some lesser ability.  However, it is well-established that the use of such terms in a medical opinion is not always impermissibly vague, so long as there is sufficient context to allow the ALJ to interpret those terms.  *See Jeffery A. v. Comm'r of Soc. Sec.*, 18-CV-1473, 2020 WL 1234867, at *7-8 (N.D.N.Y. Mar. 13, 2020) (Hummel, M.J.) (indicating that a medical opinion using terms such as "moderate" are not impermissibly vague where the conclusion is well supported by the source's extensive examination or where the language used is "rendered more concrete by the facts in the underlying opinion and by other opinion evidence in the record") (collecting cases).  Such context exists in the case, as Dr. Lorensen provided a detailed report of the observations from her examination that informed her opinion.  The record also contains ample evidence from both the same time period as Dr. Lorensen's examination, and at times before and after that examination, that would permit the ALJ to interpret the use of the terms "mild" and "moderate."

Regarding the opined moderate limitation in his ability to turn his head, the ALJ did not merely interpret "moderate" to mean "frequent" in this case, but rather explicitly found that a "moderate" restriction in that activity is not supported by plaintiff's ability to drive or perform various activities of

17

daily living.  AT 27.  Plaintiff argues that those reasons are not sufficient to reject this limitation because those activities are not inconsistent with the evidence, are not incompatible with a claim for disability, and are consistent with his reports that he does activities at his own pace and takes breaks when his pain increases.  Dkt. No. 13, at 16.  However, I find no error in the ALJ's reliance on those activities.  Notably, the ALJ did not rely on plaintiff's activities to show that he had no limitations or as a basis for finding that plaintiff is not disabled.  Rather, he assessed that plaintiff's reports that he can drive – an activity that requires turning of the head – and perform other activities suggesting that his ability to turn his head was not quite as limited as Dr. Lorensen opined.  Indeed, the ALJ did not conclude that plaintiff has no limitations in his ability to turn his head, but found that he was limited in his ability to do so frequently.  AT 21-22.

Significantly, at the first hearing, plaintiff testified that he cannot turn his head fully to the right, but did not allege at either that hearing or the subsequent hearing that his neck issues prevented him from driving.  AT 81, 107.  At the follow-up hearing, he testified that his ability to drive was limited only by his reported capacity for sitting at one time.  AT 107.

Further, the Commissioner is correct that the record as a whole contains very few notations of any abnormality in the range of motion of

plaintiff's neck.  *See e.g.*, AT 461, 500, 559.  The ALJ specifically noted

that clinical findings related to motion in plaintiff's neck were generally

normal.  AT 24.  One of the few treatment notes where plaintiff specifically

reported difficulty turning his head was from March 2016, only a month

prior to Dr. Lorensen's opinion, which suggests the level of restriction

indicated by Dr. Lorensen's examination and opinion was not indicative of

plaintiff's functioning during the broader period at issue.  AT 753.  I note

also that no other source provided an opinion that would support greater

limitations regarding turning of the neck.  Because many of plaintiff's own

reports of activities and the evidence in the record are inconsistent with the

greater limitations in Dr. Lorensen's opinion, I find no error in the ALJ's

rejection of that specific portion of the opinion.[4]

Plaintiff also argues that the ALJ's reliance on Dr. Lorensen's finding

of a mild limitation in use of the right hand is erroneous because he

"ignored exam findings" that showed synovitis, tenderness, swelling, and

"markedly" decreased grip strength in the right hand.  Dkt. No. 13, at 16.

---

[4]     I note also that, even if the ALJ had accepted this portion of Dr. Lorensen's
opinion, there appears to be no legal error in finding that a moderate limitation could
translate to a limitation to frequent turning of the head, particularly in light of the noted
lack of evidence to support a need for greater restriction.  *See Jennifer Lee W. v.
Berryhill*, 18-CV-0064, 2019 WL 1243759, at *5 (N.D.N.Y. Mar. 18, 2019) (indicating
that a "moderate limitation is not inconsistent with a finding that an individual can
engage in frequent, but not constant activity") (citing *Parks v. Comm'r of Soc. Sec.*,
2016 WL 590227, at *7 (N.D.N.Y. Feb. 11, 2016)).

However, plaintiff offers no persuasive argument that the ALJ actually did fail to consider the evidence he cites.  It is well-established that an ALJ need not discuss every piece of evidence to show that it was considered. *See Sarah C. v. Comm'r of Soc. Sec.*, 19-CV-1431, 2021 WL 1175072, at *7 (Mar. 29, 2021) (Scullin, J.) (noting that "the ALJ is not required to explicitly discuss every piece of evidence in the record and the fact that she did not cite certain pieces of evidence does not establish that she failed to consider them").  Indeed, the ALJ specifically discussed various pieces of evidence that showed limitations regarding plaintiff's right hand, such as 4/5 strength, 3/5 grip strength, reduced sensation, and difficulty zipping and unzipping.  AT 23-25.  The ALJ also noted that treatment of plaintiff's psoriatic arthritis with Remicade and Inflectra in particular helped to improve plaintiff's joint issues, including in his hand.  AT 25.  The fact that a few treatment notes, most notably from 2019, showed some tenderness in his hand joints and one instance of "markedly" decreased grip strength do not undermine the ALJ's reliance on Dr. Lorensen's opinion, as the overall record provides substantial support for the ALJ's finding.  That substantial evidence might also support plaintiff's argument does not constitute reversible error; the relevant question on this appeal is instead whether substantial evidence supports the ALJ's findings.  *Sarah C.*, 2021 WL

1175072, at *7.

I acknowledge that plaintiff's impairments, particularly his psoriasis and psoriatic arthritis, have demonstrably caused him a significant amount of pain and difficulty, particularly during the time period prior to his being approved to start treatment with Remicade in 2017.  However, although he has shown, as the ALJ found, that his impairments render him unable to perform his past work as a truck driver, plaintiff has not shown that a reasonable factfinder would have to conclude that he has greater limitations than were accounted for in the RFC or that he is unable to perform any work as a result of his impairments and functional limitations throughout the relevant period.  Because the ALJ did not inappropriately weigh Dr. Lorensen's opinion and I see no glaring error in the ALJ's assessment of the other medical opinions and evidence – and plaintiff has raised no allegations of other errors – I find that remand is not warranted regarding the ALJ's assessment of plaintiff's physical RFC.

2.    The ALJ's Assessment of Plaintiff's Depression

Plaintiff also argues that the ALJ erred in failing to include any limitations related to his ability to interact with others in the RFC, despite finding that he has a mild limitation in that area when assessing the severity of his impairment at step two.  Dkt. No. 13, at 18-19.  Plaintiff points to his

21

own testimony that he is "constantly angry" and short-tempered with people, and that he does not get along with other people, to support the need for such limitations. *Id.*

I find plaintiff's argument unpersuasive. The fact that the ALJ found that plaintiff has a mild limitation in his ability to interact with others does not require that he find any corresponding limitations in the RFC if specific, work-related limitations are not supported by the evidence. *See Michelle B. v. Comm'r of Soc. Sec.*, 20-CV-0332, 2021 WL 3022036, at *7-8 (N.D.N.Y. July 16, 2021) (Hurd, J.) (finding the ALJ did not err in failing to include in the RFC restrictions related to mild limitations where the ALJ discussed how he considered the mental impairments and appropriately rejected more restrictive opinion evidence). The ALJ specifically stated that his RFC "reflects the degree of limitation [he] found in the 'paragraph B' mental function analysis," which indicates that he did indeed consider whether plaintiff's mild limitation translated into any work-related functional restrictions. AT 21. When discussing the mental impairment, the ALJ considered the medical evidence and subjective reports, including the fact that medication improved his symptoms, and indicated that he afforded less weight to the opinion from PA Kristin Suchowiecki that plaintiff's depression was uncontrolled and would impact his ability to hold a job because he

found that opinion to be inconsistent with her own treatment notes and the totality of the evidence.  AT 20.

As the ALJ discussed, there is no evidence that would support the need to include any limitation related to social interaction in the RFC. Although plaintiff reported that he experiences depression that causes irritability and anger, the treatment records show that, only a few months after beginning treatment with first Lexapro and later Effexor, he reported that he felt good with no side effects other than some concerns about weight gain.  AT 780, 782, 792, 794, 796, 787-88, 801, 803, 805, 815, 931, 1108.  He reported some instances where his mood decreased, but increases in medication generally helped, and he reported that Effexor controlled his anger.  AT 806-07, 808-09, 810-11, 813, 1078.  Plaintiff reported increased irritability and anger when care providers needed to lower his dose of Effexor in mid-2019 out of concerns about his liver functioning, but the addition of Seroquel helped reduce those symptoms again.  AT 1064, 1066, 1069, 1075.  Even plaintiff testified at the hearings that his medication helped his mental health symptoms by making them tolerable and manageable.  AT 82, 101.  The ALJ acknowledged this evidence of consistent improvement with medication and noted that his self-reports and presentation at examinations generally did not indicate

difficulty interacting with others.  AT 20.  Because substantial evidence supports the ALJ's finding that no limitations regarding interaction were warranted, I find that remand is not indicated on this issue.

### 3.    The Step Five Finding

Plaintiff additionally argues that the ALJ's step five finding is not supported by substantial evidence because the ALJ relied on VE testimony that was based on a hypothetical question that did not account for all of the supported limitations.  However, given that this argument is premised on plaintiff's previous argument that he should have been limited to a greater extent with respect to his ability to turn his head, it must also be rejected, because I have found that the ALJ did not commit any error in assessing plaintiff's ability to turn his head, or any other aspect of the RFC finding.

## IV.    SUMMARY AND ORDER

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I find that the determination resulted from the application of proper legal principles and is supported by substantial evidence.  Accordingly, it is hereby

ORDERED that defendant's motion for judgment on the pleadings (Dkt. No. 18) is GRANTED, plaintiff's motion for judgment on the pleadings

(Dkt. No. 13) is DENIED, the Commissioner's decision is AFFIRMED, and

plaintiff's complaint is DISMISSED; and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:      September 27, 2022      _____
            Syracuse, NY           DAVID E. PEEBLES
                                    U.S. Magistrate Judge